**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**MICHAEL P.,**[1]

        **Plaintiff,**                    **Case No. 1:21-cv-1134**
                                              **Magistrate Judge Norah McCann King**

  **v.**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

        **Defendant.**

**OPINION AND ORDER**

      This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Michael P. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

**I.    PROCEDURAL HISTORY**

      On February 26, 2018, Plaintiff filed his application for benefits, alleging that he has been disabled since May 18, 2017. R. 79, 92, 203–04. The application was denied initially and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

*upon reconsideration*. R. 110–14, 117–19. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 120–21. Administrative Law Judge Frederick Timm ("ALJ") held a hearing on January 13, 2020, at which Plaintiff, who was represented by counsel, testified. R. 56–78. The ALJ conducted another hearing on July 1, 2020, at which Plaintiff, who was again represented by counsel, again testified, as did a vocational expert. R. 40–55. In a partially favorable decision dated July 20, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security prior to June 1, 2020, but that he had become disabled on that date and continued to be disabled through the date of the decision. R. 21–34. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on December 1, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 9, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 9.[3] On June 14, 2021, the case was reassigned to the undersigned. ECF No. 10. The matter is ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.");

*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict."  *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review."  *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected."  *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short

4

paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent

such articulation, the Court "cannot tell if significant probative evidence was not credited or

simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the
> weight [s/]he has given to obviously probative exhibits, to say that [the] decision is
> supported by substantial evidence approaches an abdication of the court's duty to
> scrutinize the record as a whole to determine whether the conclusions reached are
> rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can

enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or

without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the

record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or

contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210,

221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a

complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the

record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see*

*A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award

benefits should be made only when the administrative record of the case has been fully

developed and when substantial evidence on the record as a whole indicates that the claimant is

disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation

omitted); *see A.B.*, 166 F. Supp.3d at 518.

## B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation for determining

whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4).

"The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in

6

the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.     ALJ DECISION AND APPELLATE ISSUES

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between May 18, 2017, his alleged disability onset date, and the date of the decision. R. 24.

At step two, the ALJ found that Plaintiff's obesity, bipolar affective disorder, and generalized anxiety disorder were severe impairments. *Id.* The ALJ also found that Plaintiff's alleged lower back pain with sciatica, carpal tunnel syndrome, and hepatitis were not severe impairments. *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 24–26.

At step four, the ALJ found that, since May 18, 2017, Plaintiff had the RFC to perform light work subject to various additional limitations. R. 26–31. The ALJ also found that, since May 18, 2017, this RFC did not permit the performance of Plaintiff's past relevant work as an automobile mechanic. R. 31.

At step five, the ALJ found that, prior to the established disability onset date, Plaintiff was an individual closely approaching advanced age but that, on June 1, 2020, Plaintiff's age category changed to that of an individual of advanced age. R. 32. The ALJ relied on the testimony of the vocational expert to find that, prior to June 1, 2020, a significant number of jobs–*e.g.,* jobs as a bench assembler, inspector and office helper–existed in the national economy and could be performed by Plaintiff. R. 32–33. The ALJ also found that, beginning

June 1, 2020, there were no jobs that exist in significant numbers in the national economy that Plaintiff could perform. R. 33. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act prior to June 1, 2020, but that he became disabled on that date and has continued to be disabled through the date of this decision. *Id.*[4]

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 17; *Plaintiff's Reply Brief*, ECF No. 21. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 20.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

On January 13, 2018, Mohammed Ashraf, M.D., Plaintiff's treating psychiatrist, completed a five-page, fill-in-the-blank, and check-the-box form entitled, "Psychiatric/Psychological Impairment Questionnaire" ("2018 opinion"). R. 665–69 (Exhibit 7F/3–7), 734–38 (Exhibit 12F/1–5) (duplicate).[5] Dr. Ashraf had treated Plaintiff on a monthly or bimonthly basis since May 18, 2017, and had most recently seen Plaintiff on January 13, 2018. R. 665. Dr. Ashraf diagnosed bipolar I disorder, most recent episodes depressed, and generalized anxiety disorder. *Id*. Dr. Ashraf identified the psychosocial factors as follows: "Patient feel[s] very depressed, sad, and anxious. He has frequent mood lability and racing thoughts. He feels tired most of the time and lying on the bed." *Id*. Dr. Ashraf noted that Plaintiff required

---

[4] In reaching this decision, the ALJ also found that Plaintiff's substance use disorder was not a contributing factor material to the determination of disability. *Id*.

[5] For ease of reference, the Court will refer to only the pages from Exhibit 7F/3–7, R. 665–69.

hospitalization or inpatient treatment of his symptoms from May 18, 2017, to July 18, 2017. *Id.*

Dr. Ashraf indicated that Plaintiff's diagnoses and limitations were expected to last at least

twelve months and he denied that Plaintiff was a malingerer. *Id.* Asked to identify the signs and

symptoms supporting his diagnoses and assessment, Dr. Ashraf noted: depressed mood;

persistent or generalized anxiety; feelings of guilt or worthlessness; hostility or irritability; manic

syndrome; other mood disturbances, psychotic thoughts; grandiose thoughts; illogical thinking;

obsessions or compulsions; suicidal ideation, past suicide attempt; other oddities of thought,

including auditory hallucinations; difficulty thinking or concentrating; easy distractibility; flight

of ideas; poor immediate memory; paranoia/suspiciousness; persistent irrational fears; vigilance

and scanning; anhedonia/pervasive loss of interests; decreased energy; intense and unstable

interpersonal relationships; pathological dependence, passivity, or aggressiveness; psychomotor

abnormalities, agitation; speech abnormalities, slowed speech; social withdrawal or isolation;

delusions; disorientation to time and/or place; visual hallucinations; excessive sleep, sleeping

more than usual, feels tired all the time. R. 666. Asked to identify the symptoms that were the

most frequent and/or severe, Dr. Ashraf responded: "feels tired, depressed and withdrawn, no

motivation to do anything. Hard to engage in any group activities. No interest in any activities."

R. 667. "During mental status exam, patient showed poor attention and concentration. His energy

level extremely low. He verbalized he feels depressed and sad and do[es] not want to engage in

any activities." *Id.* Dr. Ashraf denied that Plaintiff's psychiatric conditions exacerbated pain or

any other physical symptom. *Id.* According to Dr. Ashraf, Plaintiff experienced episodes of

decompensation or deterioration in a work or work-like setting that caused him to withdraw from

the situation and/or experience an exacerbation of symptoms, explaining that Plaintiff "had

[made] some inappropriate remarks to his co-workers." *Id.* Dr. Ashraf went on estimate

Plaintiff's ability to perform mental activities in a competitive environment on a sustained and ongoing basis (8 hours a day, 5 days per week), using the following scale: None (symptoms do not interfere with ability); mild (symptoms rarely interfere with ability); moderate (symptoms occasionally—up to one-third of an 8-hour workday—interfere with ability); moderate-to-marked (symptoms frequently—one-third to two-thirds of an 8-hour workday—interfere with ability); and marked (symptoms constantly—more than two-thirds of an 8-hour workday—interfere with ability). R. 668. According to Dr. Ashraf, Plaintiff had a moderate limitation in his ability to ask simple questions or request assistance; a moderate-to-marked limitation in his ability to carry out simple, one-to-two step instructions; perform activities within a schedule and consistently be punctual; perform at a consistent pace without rest periods of unreasonable length or frequency; and travel to unfamiliar places or use public transportation; and a marked limitation in his ability to remember locations and work-like procedures; understand and remember one-to-two step instructions; understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; sustain ordinary routine without supervision; work in coordination with or near others without being distracted by them; make simple work-related decisions; complete a workday without interruptions from psychological symptoms; interact appropriately with the public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them; maintain socially appropriate behavior; respond appropriately to workplace changes; be aware of hazards and take appropriate precautions; set realistic goals; and make plans independently. *Id.* Plaintiff was likely to be absent from work more than three times per month as a result of his impairments or treatment. R. 669. In Dr. Ashraf's best medical opinion, Plaintiff's symptoms and related limitations applied as far back as May 18, 2017. *Id.* Dr. Ashraf indicated

that the available clinical and objective findings detailed in this questionnaire were reasonably consistent with Plaintiff's symptoms and functional limitations. *Id*. Dr. Ashraf further commented that Plaintiff "needs continuation of treatment for mental stabilization." *Id*.

On June 25, 2019, Dr. Ashraf completed another five-page, fill-in-the-blank, and check-the-box form entitled, "Psychiatric/Psychological Impairment Questionnaire" ("2019 opinion"). R. 698–702 (Exhibit 9F/3–7). Dr. Ashraf had last examined Plaintiff on June 22, 2019, R. 698, and diagnosed bipolar I disorder, current episodes depressed, moderate. *Id*. Dr. Ashraf identified Plaintiff's psychosocial factors as follows: "Remains depressed, sad and anxious[.] Feels tired most of the day with low energy and poor motivation. Feels hopeless and helpless. Denies having suicidal and homicidal thoughts." *Id*. Dr. Ashraf noted that Plaintiff required hospitalization or inpatient treatment of his symptoms on May 18, 2017. *Id*. According to Dr. Ashraf, Plaintiff's course of treatment has been consistent with the symptoms and limitations described in this questionnaire. *Id*. Plaintiff's diagnoses and limitations were expected to last at least twelve months. R. 699. Asked to identify the signs and symptoms that support his diagnoses and assessment, Dr. Ashraf responded: depressed mood; persistent or generalized anxiety; abnormal affect that is constricted, irritable, labile, and inappropriate; feelings of guilt or worthlessness; irritability; manic syndrome; grandiose thoughts; illogical thinking; suicidal ideation, past suicide attempt; difficulty thinking or concentrating; easy distractibility; flight of ideas; loss of intellectual ability of 15 IQ points or more; poor memory, including immediate, recent, and remote; intrusive recollections of a traumatic experience; paranoia/suspiciousness; persistent irrational fears; anhedonia/pervasive loss of interests; appetite disturbances/weight change; change in personality; decreased energy; impulsive or damaging behavior; pathological dependence; psychomotor abnormalities, agitation; speech abnormalities, slowed speech;

delusions; disorientation to time and/or place; auditory hallucinations; loosening of associations; and excessive sleep. R. 699. In response to the question asking which of these symptoms are the most frequent and/or severe, Dr. Ashraf responded: "Irritable and depressed mood most of the time remains isolated and withdrawn, reported frequently [sic] mood swings and racing thoughts." R. 700. Dr. Ashraf also explained the following to support his diagnoses and assessment: "Alert and oriented. When asked about mood repeated, 'Not feeling good.' Affect: Constricted and Dysphoric, denies having suicidal and homicidal thoughts." *Id*. Plaintiff did not have reduced intellectual functioning. *Id*. According to Dr. Ashraf**,** Plaintiff's psychiatric conditions exacerbated his pain or physical symptoms, including sciatica and back pain; moderate to severe intensity. *Id*. Dr. Ashraf indicated that Plaintiff experienced episodes of decompensation or deterioration in a work or work-like setting that caused him to withdraw from the situation and/or experienced an exacerbation of symptoms, explaining that "[c]urrently, Patient feels depressed, sad and anxious with on and off racing thoughts and mood swings." *Id*. Dr. Ashraf went on estimate Plaintiff's ability to perform mental activities in a competitive environment on a sustained and ongoing basis (8 hours a day, 5 days per week), using the following scale: None (symptoms do not interfere with ability); mild (symptoms rarely interfere with ability); moderate (symptoms occasionally—up to one-third of an 8-hour workday—interfere with ability); moderate-to-marked (symptoms frequently—one-third to two-thirds of an 8-hour workday—interfere with ability); and marked (symptoms constantly—more than two-thirds of an 8-hour workday—interfere with ability). R. 701. According to Dr. Ashraf, Plaintiff had a none-to-mild limitation in his ability to carry out simple, one-to-two step instructions; interact appropriately with the public; ask simple questions or request assistance; and accept instructions and respond appropriately to criticism from supervisors; a moderate limitation in his

12

ability to carry out detailed instructions; perform activities within a schedule and consistently be punctual; get along with coworkers or peers without distracting them; maintain socially appropriate behavior; and be aware of hazards and take appropriate precautions; a moderate-to-marked limitation in his ability to understand and remember locations and work-like procedures; understand and remember one-to-two step instructions; understand and remember detailed instructions; maintain attention and concentration for extended periods; sustain ordinary routine without supervision; work in coordination with or near others without being distracted by them; make simple work-related decisions; complete a workday without interruptions from psychological symptoms; perform at a consistent pace without rest periods of unreasonable length or frequency; respond appropriately to workplace changes; travel to unfamiliar places or use public transportation; and set realistic goals. *Id.* Dr. Ashraf denied that Plaintiff experienced any other work-related limitations. R. 702. According to Dr. Ashraf, Plaintiff was likely to be absent from work more than three times per month as a result of his impairments or treatment. *Id.* In Dr. Ashraf's best medical opinion, Plaintiff's symptoms and limitations applied as far back as May 18, 2017. *Id.* Dr. Ashraf indicated that the available clinical and objective findings detailed in this questionnaire were reasonably consistent with Plaintiff's symptoms and functional limitations. *Id.*

## V.   DISCUSSION

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination because the ALJ failed, *inter alia*, to properly consider Dr. Ashraf's opinions. *Plaintiff's Brief*, ECF No. 17, pp. 15–22; *Plaintiff's Reply Brief*, ECF No. 21. For the reasons that follow, this Court concludes that the ALJ's RFC determination is not supported by substantial evidence and that the ALJ's consideration of Dr. Ashraf's opinions were flawed, but for reasons somewhat

different from those raised by Plaintiff. *Cf. Jennings o/b/o Thomas v. Saul*, No. CV 20-1953, 2021 WL 601097, at *2-3 (E.D. Pa. Feb. 16, 2021), *reconsideration denied sub nom. Jennings o/b/o Thomas v. Saul*, No. CV 20-1953, 2021 WL 1175134 (E.D. Pa. Mar. 29, 2021) ("This unexplained mistake is a clear, reversible error that this court has addressed *sua sponte*.") (citations omitted); *McNeal v. Comm'r of Soc. Sec.*, No. CIV.A. 10-318-J, 2012 WL 1038898, at *3 (W.D. Pa. Mar. 28, 2012) ("The Court does not reach any of the issues raised by Plaintiff but finds that remand is warranted on grounds not raised by the parties.").

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the administrative law judge who is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of light work:

14

After careful consideration of the entire record, the undersigned finds that since May 18, 2017, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he is never able to climb ladders, ropes or scaffolds and must avoid concentrated exposure to extreme cold. He is further limited to goal-oriented rather than production-paced tasks, that require no significant interaction with the general public.

R. 26. In reaching this determination, the ALJ found, *inter alia*, that Dr. Ashraf's 2018 opinion was "not persuasive," but that his 2019 opinion was "mostly persuasive[,]" reasoning as follows:

Dr. Ashraf completed several assessments at the request of the claimant's representative that are not persuasive based on their inconsistency with Dr. Ashraf's own detailed treatment notes. An assessment completed in January 2018 indicated the claimant had a diagnosis of bipolar 1 disorder, most recent episode depressed and generalized anxiety disorder. The claimant was noted as tired, mostly staying in bed, depressed, sad, anxious and having frequent mood lability and racing thoughts. Check-marks on a pre-printed form noted symptoms including psychotic thoughts, social withdrawal, illogical thinking, suicidal ideation, visual hallucinations, auditory hallucinations and decreased need for sleep. Also using check-marks on a pre-printed form, the claimant was noted as having marked limitation regarding the ability to understand and remember instructions, marked limitation regarding the ability to maintain concentration, persistence and pace, and marked limitation regarding the ability to work in coordination with others and complete a workday without distraction due to mental health related symptoms. In another part of the form, the claimant was noted as having moderate difficulty regarding awareness of hazards, marked difficulty regarding the ability to adapt and respond to workplace changes, and marked limitation regarding the ability to interact with the public and get along with co-workers. It was opined that the claimant would miss more than three days of work each month due to ongoing symptoms. (Exhibits 7F and 9F). This assessment is not persuasive as the degree of limitation noted by Dr. Ashraf is not supported by his own treatment notes.

Dr. Ashraf provided another assessment at the request of the claimant's representative in June 2019, using the same form as used in January 2018. At this time, Dr. Ashraf indicated he was seeing the claimant once every one to two months. Again, various symptoms that are not supported by treatment notes were checked off on the pre-printed form including agitation, delusions and auditory hallucinations. The claimant was noted as being tired most of the day with low energy and poor motivation, remaining depressed, sad and anxious. The claimant was also described as having frequent mood swings despite all treatment notes subsequent to his discharge from the Florida rehabilitation facility indicating that mood swings were controlled by Lithium and other prescribed medications. The degree of severity of symptoms on this form was decreased from the prior report from January 2018. At this time, the claimant was noted to have a moderate-to-marked degree of limitation regarding the ability to work in coordination with

15

others and no limits regarding the ability to carry out simple instructions and moderate limitation with following difficult instructions. The claimant was noted as having a moderate-to-marked degree of limitation regarding the ability to maintain pace and respond to change in the workplace. Regarding the ability to accept instructions and criticism from supervisors and interact with the public, the claimant was found to have no more than a mild degree of limitation. (Exhibit 9F). *The conclusions of this assessment are mostly persuasive in their indication that while the claimant has a degree of limitation due to mental health related symptoms, they are mostly of a moderate degree. This assessment is more consistent with Dr. Ashraf's own treatment notes.* It is noted that the claimant has required minimal adjustment of prescribed medication since August 2017 and that his only mental health treatment appears to be limited to periodic, outpatient appointments with Dr. Ashraf.

R. 29–30 (emphasis added).

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. His decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id.* at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[6] the regulations eliminated the hierarchy of

---

[6] As previously noted, Plaintiff's claim was filed on February 26, 2018.

medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1).  As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

17

The applicable regulations further require the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id.* at § 404.1520c(b). "Specifically, the ALJ must explain how he considered the 'supportability' and 'consistency' factors for a medical source's opinion. . . . The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec.*, No. 1:19-CV-01567, 2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

In the case presently before this Court, the ALJ found Dr. Ashraf's 2019 opinion "mostly persuasive" to the extent that Plaintiff "has a degree of limitation due to mental health related symptoms, th[at] are *mostly* of a *moderate* degree." R. 29 (emphasis added). However, as detailed above, most of Dr. Ashraf's functional limitations in his 2019 opinion were characterized as "moderate-to-marked[,]" *i.e.*, symptoms that frequently (one-third to two-thirds of an 8-hour workday) interfere with ability; they were not characterized as simply "moderate[,]" *i.e.*, symptoms that occasionally (up to one-third of an 8-hour workday) interfere with ability. R. 701 (reflecting thirteen moderate-to-marked limitations and five moderate limitations). Even if the Court assumed that the ALJ considered Dr. Ashraf's moderate-to-marked limitations to be equivalent to simply moderate limitations, the questionnaire used by Dr. Ashraf explicitly defined these degrees of limitations. The difference is significant: symptoms that interfere with an ability up to one-third of an 8-hour workday (moderate limitations) are simply not the same as symptoms that interfere with an ability one-third to two-thirds of a workday (moderate-to-marked limitations). *Id.* The ALJ quite simply mischaracterized the functional limitations in Dr.

Ashraf's 2019 opinion. R. 29. Moreover, the Court cannot conclude that this mischaracterization is harmless. In finding Dr. Ashraf's 2019 opinion to be "mostly persuasive[,]" the ALJ appeared to credit most of mental functional limitations contained in that report, yet the RFC crafted by the ALJ limits Plaintiff only to "goal-oriented rather than production-paced tasks, that requires no significant interaction with the general public." R. 26. The ALJ's RFC contains no limitations on Plaintiff's abilities related to understanding, memory, and adaptation despite Dr. Ashraf's limitations in those areas and reflected in his 2019 opinion. R. 26, 701. Nor are there restrictions addressing, *inter alia*, sustaining an ordinary routine without supervision, making simple work-related decisions, or completing a workday without interruptions from psychological symptoms. *Id*. Based on this record, the Court cannot determine why the ALJ failed to incorporate such limitations after appearing to credit them. If the ALJ intended to reject some of these limitations, he did so without explanation. R. 29. Although an ALJ is free to consider the medical opinions in the record and to determine whether and to what extent those opinions are to be credited, an ALJ must in all events explain his reasoning in that regard. *Cotter*, 642 F.2d at 704–05; *Fargnoli,* 247 F.3d at 42; *Morales*, 225 F.3d at 317; *see also Jones,* 364 F.3d at 505 (providing that an ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review"). Under the circumstances presented in this case, the Court cannot conclude that substantial evidence supports the ALJ's decision. *Id.*

Even setting aside the confusion and failure to explain his consideration of Dr. Ashraf's moderate-to-marked limitations, the ALJ's consideration of this physician's moderate functional limitations contained in the 2019 opinion warrants remand. The ALJ apparently credited those moderate limitations, but the RFC contains no corresponding limitations. R. 26, 29. For example, Dr. Ashraf opined that Plaintiff was moderately limited in his ability "[t]o get along with

19

coworkers of peers without distracting them[,]" R. 701, yet the RFC limited Plaintiff's ability to interact with others only to interaction with the public, R. 26.[7] This is particularly significant because, in addition to apparently crediting the moderate limitations in the 2019 opinion, the ALJ expressly found at step two of the sequential evaluation process that Plaintiff had a "moderate" limitation in his ability to interact with "others[.]" R. 25. "The public, supervisors, and co-workers are distinct groups, and are separately addressed on the mental RFC forms. Thus, limitations on one type of interaction in the RFC does not account for limitations on the others." *Grinolds v. Colvin*, No. 15-30, 2015 WL 5178184, at *2 (W.D. Pa. Sept. 4, 2015). *See also Tschannen v. Colvin*, No. 15-182, 2015 WL 7012531, at *1–2 (W.D. Pa. Nov. 12, 2015) ("[I]t is unclear how the RFC accommodates Plaintiff's moderate social limitations assigned by Dr. Brace and Dr. Newman. Those limitations were, apparently, accepted by the ALJ, but the RFC includes limitations relating only to supervisors and the public. . . . While the ALJ is certainly entitled to exclude limitations from an RFC, he must explain why he is doing so.").

In this case, the ALJ's decision is silent as to any limitation in interacting with co-workers and the ALJ failed to explain this omission. R. 29–30. This omission and failure to explain take on even greater significance when one considers that the vocational expert, upon

---

[7] Plaintiff also argues that remand is required because, *inter alia*, the ALJ credited the moderate limitations contained in the 2019 opinion but then failed to incorporate such restrictions into the RFC determination. *Plaintiff's Brief*, ECF No. 17, pp. 17–18. Plaintiff's argument, however, is based on the mistaken belief that Dr. Ashraf's 2019 opinion contained a moderate limitation in, *inter alia*, understanding, remembering, and carrying out one-to-two step instructions, when in fact it was another physician, Lidia Abrams, Ph.D., who expressed that opinion. *Id.* (citing R. 749); *compare* R. 701 (reflecting Dr. Ashraf's 2019 opinion that Plaintiff has no or only a mild limitation in his ability to carry out simple, one-to-two step instructions), *with* 739 (reflecting, *inter alia*, Dr. Abrams' opinion that Plaintiff has a moderate limitation in that area). The ALJ found Dr. Abrams' opinion of "limited persuasion." R. 30. Because the Court finds that remand is warranted on other grounds, the Court does not consider Plaintiff's challenges to the ALJ's consideration of Dr. Abrams' opinion.

whose testimony the ALJ relied, was asked to assume a claimant who is limited only in his ability to interact with the public. R. 340–41 (reflecting vocational expert's response to vocational interrogatory). The ALJ's failure to include a limitation relating to the ability to interact with co-workers, and failure to explain that omission, cannot be viewed as harmless. *See Nickens v. Colvin*, No. 14-140, 2014 WL 4792197, at *1–2 (W.D. Pa. Sept. 23, 2014) ("This omission infects the hypothetical to the vocational expert, which, in this case, did not include a reference to interaction with supervisors. . . . This matter must be remanded so that the ALJ may address whether he rejected this limitation, or, if he failed to consider it, to do so.") (citations omitted); *Capo v. Comm'r of Soc. Sec.*, No. CV 2:17-1280, 2018 WL 5982435, at *4 (W.D. Pa. Nov. 13, 2018) (remanding the action where the "Plaintiff correctly argues that the ALJ's RFC finding [that limited the plaintiff, *inter alia*, to only occasional public interaction, but containing no similar restrictions as to Plaintiff's interactions with supervisors and/or co-workers] appears inconsistent with his acceptance of Dr. Marion's moderate limitations, specifically, the moderate limitation on interactions with supervisors and/or co-workers. Although the ALJ is entitled to reject limitations that are unsupported by the record, he must provide the reasons for discounting that evidence"); *Tschannen*, 2015 WL 7012531, at *1–2. Under these circumstances, this Court cannot conclude that substantial evidence supports the ALJ's RFC determination. *See id.*; *Sanford v. Comm'r of Soc. Sec.*, No. CIV. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) ("The Third Circuit has held that access to the Commissioner's reasoning is [ ] essential to a meaningful court review.") (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Under these circumstances, remand of the matter for further consideration is appropriate even if, upon further examination of these issues, the ALJ again concludes that Plaintiff is not

entitled to benefits.[8] *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision."). The Court therefore concludes that the decision of the Acting Commissioner must be reversed, and the matter must be remanded for further consideration of these issues.

## VI.     CONCLUSION

The Court therefore **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  April 19, 2023                                    *s/Norah McCann King*
                                                   NORAH McCANN KING
                                                   UNITED STATES MAGISTRATE JUDGE

---

[8] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Ashraf's 2019 opinion and the RFC, the Court does not consider those claims.